

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00128-CR

ZACK ELDRED, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 11-F-762-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# OPINION

## I.    Factual and Procedural Background

Zack Eldred, Jr., appeals from his conviction of continuous sexual abuse of a child under fourteen years of age.  *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2013).  The State alleged Eldred, age forty-nine, sexually abused Holly Keilburg (a pseudonym), age thirteen, two or more times in a thirty-day period.

In his recorded statement[1] to the police and in a written statement, Eldred denied any sexual acts with Keilburg, though he admitted that he and Keilburg slept in the same bed together.  Keilburg, fifteen at the time of trial, testified that between July 1, 2010, and December 7, 2010, when she was thirteen, she and Eldred had sex "[f]ive to six times a month."  Keilburg testified that (1) Eldred performed oral sex on her, (2) Eldred penetrated her vagina with his fingers, (3) she performed oral sex on Eldred, and (4) they engaged in sexual intercourse.  In May 2011, when she was fourteen, Keilburg told her mother that she and Eldred had been having sexual relations.  Keilburg's mother took her to the hospital on May 9, 2011.  The hospital informed the police, and Keilburg was later interviewed on May 17, 2011, by Missy Davison, a forensic examiner with the Texarkana Children's Advocacy Center.

At trial, the State presented Keilburg's testimony as well as the outcry witness testimony of Davison.  Karrah Dickeson, the Director of the Texarkana Children's Advocacy Center, testified as an expert witness for the State.  The trial court excluded evidence that Keilburg had

---

[1]Both audio and video were captured by the recording.

been previously abused. A jury found Eldred guilty and assessed punishment at life imprisonment. The trial court sentenced Eldred consistent with the jury's assessment.

Eldred alleges that the trial court erred in three respects: (1) admitting the testimony of Davison as outcry witness testimony, (2) admitting the expert testimony of Dickeson, and (3) excluding evidence that Keilburg had been sexually assaulted in the past. We conclude that Davison was a proper outcry witness, Dickeson's expert testimony was relevant and admissible under Rule 403 of the Texas Rules of Evidence, and any error in excluding the prior sexual abuse of Keilburg was not preserved for appellate review.

## II.     Davison Was a Proper Outcry Witness

In cases involving certain sex crimes against children, Article 38.072 of the Texas Code of Criminal Procedure provides an exception to the hearsay rule for testimony by outcry witnesses when specific requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2013). An outcry witness is defined as the first person eighteen years of age or older, other than the defendant, to whom the child victim makes a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). The outcry must in some discernible manner describe the alleged offense; it must be more than just words generally suggesting that something in the area of child abuse occurred. *See Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). If contested by the defense, the trial court must hold a hearing outside the presence of the jury to determine "'based on the time, content, and circumstances of the statement' whether the victim's out-of-court statement is 'reliable.'" *Sanchez v. State*, 354 S.W.3d 476, 484–85 (Tex.

3

Crim. App. 2011) (quoting Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2)). The victim must either testify or be available to testify at this hearing. *Id*. at 485.

This Court has observed that "an outcry witness is not person-specific, but event-specific." *Broderick*, 35 S.W.3d at 73; *see Mireles v. State*, 413 S.W.3d 98, 104 (Tex. App.—San Antonio 2013, pet. ref'd); *Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (mother proper outcry witness for act of oral contact, but forensic interviewer proper outcry witness for act of digital penetration); *accord Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Multiple outcry witnesses are permissible, but there can only be one outcry witness per event. *See Lopez*, 343 S.W.3d at 140.

Eldred argues that Davison's testimony was inadmissible as hearsay because (1) Keilburg's age did not allow use of the outcry statute and (2) Keilburg made statements about the offense to numerous adults prior to being interviewed by Davison. Eldred notes the State's contention during opening argument that "[t]he outcry happened when the child was at the hospital."

At the beginning of trial, the trial court conducted a hearing outside the presence of the jury to determine whether Davison was a proper outcry witness. The State introduced the testimony of Davison and Keilburg to establish that Davison was the first adult to whom Keilburg made discernible allegations. When asked by the trial court if the defense would be calling any witnesses, the defense responded, "No, Your Honor." Keilburg testified at this hearing, and relevant excerpts of that testimony follow:

> Q.     [By the State] Okay. Did you tell your mom the details of what happened between you and Mr. Eldred?

4

A.  No, ma'am.

Q.  Okay.  A little bit later were you asked to talk to some nurses . . . ?

. . . .

Q.  . . . Do you remember giving them any details about everything that had happened?

A.  No, ma'am.

. . . .

Q.  [By defense counsel] . . . . Did you tell anybody the details there at the hospital, or did you give it to the CAC person that interviewed you?

A.  The person who interviewed me.

. . . .

Q.  . . . . But when the nurses were giving you your treatment or your exam, did they ask you some questions about what had happened to you?

A.  A little bit, yes, sir.

. . . .

Q.  Did you ever talk to your mother about the details of what had happened?

A.  No, sir.

Although Eldred presented no witnesses, Eldred and the State agreed to the admission of

the medical records from the hospital visit.  The medical records provide as follows:

WHEN AMANDA AND [DR. FORTENBERRY] INTERVIEWED THE PT ALONE SHE ADMITTED TO REGULAR INTERCOURSE WITH THE MAN. WHEN ASK HOW OFTEN SHE STS "EVERYTIME I STAY AT HIS HOUSE[.]"

5

. . . .

"WHEN IT FIRST HAPPENED HE JUST RUBBED ON ME AND I HAD A STRONG ORGASM." . . . SHE SAID THAT AFTER THAT TIME HE USED HIS FINGERS INSIDE OF HER AND TOLD HER SHE WOULD BE SORE FOR A FEW DAYS. . . . WHEN ASKED WHEN THE LAST TIME SHE HAD SEX WITH ZACK SHE SAID AROUND 1 AM TODAY 5-9-11.

The medical records also indicate that Keilburg's mother claimed to have called Eldred and that Eldred denied the allegations.

We review a trial court's decision to admit testimony from an outcry witness for an abuse of discretion. *Brown v. State*, 189 S.W.3d 382, 385 (Tex. App.—Texarkana 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref'd). A trial court does not abuse its discretion unless the trial court's decision is outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd). We must review a trial court's ruling in light of what was before it at the time the ruling was made. *Weatherred*, 15 S.W.3d at 542.

We begin by noting that the inquiries of both Eldred and the State during the hearing on the propriety of Davison as an outcry witness focused on whether Keilburg had revealed the details of the offense prior to the interview by Davison. As correctly noted by the trial court, the standard is whether a discernable allegation has been made to an adult. *See Garcia*, 792 S.W.2d at 91 (outcry must be more than general allusion of sexual abuse). It is well established that the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about

6

the offense.  *Broderick*, 35 S.W.3d at 73; *Thomas v. State*, 1 S.W.3d 138 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd).

### A.     A Fourteen Year Old Can Make an Outcry

Article 38.072 of the Texas Code of Criminal Procedure provides, "This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child younger than 14 years of age . . . ."  TEX. CODE CRIM. PROC. ANN. art. 38.072, § 1.  Eldred contends that because Keilburg was fourteen at the time she made the outcry, Article 38.072 does not apply.

This Court has previously rejected this argument.  In *Harvey v. State*, 123 S.W.3d 623 (Tex. App.—Texarkana 2003, pet. ref'd), we held that the outcry statute applies when the offense is committed while the victim is younger than the specified statutory age and the victim makes the outcry before her eighteenth birthday.  *Id.* at 628 (citing *Manuel v. State*, No. 03-96-00185-CR, 1997 Tex. App. LEXIS 3298 (Tex. App.—Austin June 26, 1997, pet. ref'd) (not designated for publication)).  Other Texas Courts of Appeals have agreed with this interpretation. *See, e.g.*, *Salas v. State*, No. 04-12-00015-CR, 2013 Tex. App. LEXIS 2867 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication); *Alejo v. State*, No. 03-10-00436-CR, 2011 Tex. App. LEXIS 6652 (Tex. App.—Austin Aug. 19, 2011, no pet.) (mem. op., not designated for publication); *Olivera v. State*, No. 05-08-00527-CR, 2009 Tex. App. LEXIS 8641 (Tex. App.—Dallas Nov. 10, 2009, pet. ref'd) (not designated for publication).  We are not persuaded that our prior precedent was incorrectly decided.

## B. Davison Was a Proper Outcry Witness

Eldred's main argument is that Davison was not a proper outcry witness because Keilburg made discernible statements to several different adults prior to being interviewed by Davison. The outcry statute authorizes an exception to the general rule forbidding the admission of hearsay evidence for the child's first discernible description of the offense to an adult.

The trial court in this matter suggested that a statement must include a description of "how, when, and where" to be discernible, and the State, citing to dicta from a 2012 Eastland Court of Appeals opinion, urges us to adopt this as the standard for discernibility. *See Michell v. State*, 381 S.W.3d 554, 559 (Tex. App.—Eastland 2012, no pet.) (suggesting in dicta that to be discernible under Article 38.072, statement must include description of "how, when, and where"). This Court has previously rejected the position that to be discernible under Article 38.072, a statement must include a description of "how, when, and where." *See Brown*, 189 S.W.3d at 386. As we stated in *Brown*, "If a child tells someone 'how, when, and where' an offense occurred, this is *sufficient* to be a proper outcry statement." However, we declined to imply a requirement "that the details of 'how, when, and where' are *necessary* to constitute a proper outcry statement." *Id.* We see no reason to deviate from our prior precedent, and we disagree with the State's contention that a discernible statement must describe "how, when, and where." Such a requirement would be more restrictive than the discernibility standard announced by the Texas Court of Criminal Appeals. *See Garcia*, 792 S.W.2d at 91. "We instead rely on the well-established rule that, to be a proper outcry statement, the child's statement to the

8

witness must describe the alleged offense in some discernible manner and must be more than a general allusion to sexual abuse." *Brown*, 189 S.W.3d at 386; *see Garcia*, 792 S.W.2d at 91.

In *Brown*, this Court concluded the statements were not discernible because they "were not event-specific enough to show that they concerned separate and discrete events." *Brown*, 189 S.W.3d at 386. Although we did not rely on a dictionary definition in *Brown*, we note that *Brown* is consistent with the common understanding of discernible as demonstrated by the dictionary definition. "Discern" means to "recognize or identify as separate and distinct." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 355 (11th ed. 2006).

The issue before us is whether Davison was the first adult to whom Keilburg made statements concerning separate and discrete events of abuse. If the State presents evidence that a person is a proper outcry witness, the burden to rebut this evidence then falls on the defendant. *See Garcia*, 792 S.W.2d at 91. The record in this case does contain some rebuttal evidence relating to the propriety of Davison as an outcry witness. The record establishes that Keilburg talked about the abuse to numerous adults prior to being interviewed by Davison on May 17, 2011. Prior to this interview, Keilburg had discussed the abuse with her mother. The medical records from her May 9 hospital visit contain several quotes attributed to Keilburg concerning the abuse, and these notes were entered by four different hospital employees—Powell, Fortenberry, Amanda Kelly, and Matthew Hull. The medical records further suggest that Keilburg may have discussed the abuse with a fifth hospital employee, Odia Russette, but it is not clear from the records that Russette attributed any explicit quotes to Keilburg. The medical records also indicate that Keilburg was interviewed by Officer McMillan while at the hospital.

9

Davison testified that she had discussed the case with Officer Todd Aultman. The record, however, does not indicate whether Officer Aultman personally interviewed Keilburg.

The medical records from Keilburg's May 9 hospital visit comprise the entirety of the evidence offered by Eldred to rebut the State's evidence that Davison was a proper outcry witness. Eldred did not call Keilburg's mother, Dr. Fortenberry, any of the other hospital employees, or Officer McMillian to testify at the pretrial hearing. Nonetheless, the medical records alone are sufficient to rebut the State's evidence that Davison was the outcry witness concerning three events—the two initial events of abuse and the abuse that occurred the night before the May 9 hospital visit. Powell was the proper outcry witness for these three events. As to every other event, given the lack of credible rebuttal evidence, the trial court's conclusion that Davison was the appropriate outcry witness falls squarely within the zone of reasonable disagreement. Consequently, Davison was a proper outcry witness for all but the three events identified above.

Eldred's argument at trial and on appeal was that Davison was not an appropriate outcry witness for any event. When Davison testified concerning Keilburg's description of the initial two events of sexual abuse—events for which Davison was not the proper outcry witness— Eldred objected very broadly to Davison's qualifications as an outcry witness generally. Eldred did not object on the basis that Davison did not qualify as the outcry witness for those specific events, and he has raised no issue on this basis on appeal. Because Davison was a proper outcry witness for some of the events of sexual abuse, the trial court did not abuse its discretion in admitting her testimony and in overruling Eldred's overly-broad objections. Making specific

objections to each act or event is particularly important in a continuous sexual abuse case involving numerous separate and discrete acts of sexual assault, each of which could have a separate outcry witness. To preserve error concerning a proffer of evidence containing both admissible and inadmissible material, the objection must specifically reference the inadmissible material. *See Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002); *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (failure to segregate between admissible and inadmissible evidence failed to preserve any error as to admission of all). If the complaint about admissibility fails to refer to the objectionable portions of the evidence, then the trial court may safely admit or exclude it all. *Willove*r, 70 S.W.3d at 847. We overrule Eldred's first point of error.

## III.    The Trial Court Did Not Err in Admitting Dickeson's Testimony

Eldred argues in his second point of error that the trial court erred in admitting the expert testimony of Karrah Dickeson. Dickeson did not interview Keilburg and had no personal knowledge of any facts related to the case. Instead, Dickeson testified concerning common characteristics of "grooming"[2] by child predators and responded to several hypothetical questions posed by the State. Eldred objected to Dickeson's testimony as irrelevant. *See* TEX. R. EVID. 402. Alternatively, Eldred argued that even if relevant, the probative value of the evidence was substantially outweighed by its prejudicial effect. *See* TEX. R. EVID. 403. Eldred raises these same issues on appeal.

---

[2]According to Dickeson, grooming is the process employed by sexual predators on their victims through which the abnormal (sexual abuse) is made normal.

11

## A. Dickeson's Testimony Was Relevant

The Texas Court of Criminal Appeals has noted that the Texas Rules of Evidence require a trial judge to make three separate inquiries, all of which must be met before admitting expert scientific testimony. According to the court, the trial court must determine whether

> "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance.

*Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006) (quoting *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)).

Relevancy "lends itself to a liberal policy of admission of evidence for the jury's consideration." *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals explained,

> Relevance is by nature a looser notion than reliability. Whether evidence "will assist the trier of fact" and is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable. This is not to say that the relevancy inquiry will always be satisfied. *See Pierce*, 777 S.W.2d at 414–16 (expert could not say which scientific principles he discussed were applicable to facts in case and had no knowledge of witnesses' testimony); *Rousseau*, 855 S.W.2d at 668 (expert referred to "studies" and did not discuss whether any factors he planned to testify to would apply to facts of case); *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (expert failed to connect "generic testimony" to specific facts of case). The expert must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony. Establishing this connection is not so much a matter of proof, however, as a matter of application.

*Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996); *see Vela*, 209 S.W.3d at 131; *Morales*, 32 S.W.3d at 865.

12

As noted by the State, Rule 703 of the Texas Rules of Evidence permits an expert to base her opinion on data and facts made known to her during trial. TEX. R. EVID. 703; *Tillman v. State*, 354 S.W.3d 425, 439 (Tex. Crim. App. 2011); *Jordan*, 928 S.W.2d at 556 n.8. The court has also explicitly approved of the practice of testifying through hypothetical questions. *Tillman*, 354 S.W.3d at 439. Hypothetical questions are relevant when the facts of the hypothetical match the facts of the case being tried. *Id.* Because the facts of the hypothetical questions arguably match the facts of this case, the relevancy requirement has been met. The trial court did not abuse its discretion in overruling Eldred's relevancy objection.

### B. The Prejudicial Effects of Dickeson's Testimony Did Not Substantially Outweigh the Probative Value

Eldred also raises a challenge pursuant to Rule 403 of the Texas Rules of Evidence. The Supreme Court of the United States, the Texas Court of Criminal Appeals, and the Supreme Court of Texas have all recognized that scientific evidence can be excluded under a prejudice versus probative value balancing and that such analysis is distinct from the reliability test.[3] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995); *see also State v. Mechler*, 153 S.W.3d 435, 437 (Tex. Crim. App. 2005) (applying Rule 403 analysis to intoxilizer); *cf. Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998) (reliability standard applicable to soft sciences).

---

[3]The United States Supreme Court's caselaw on this subject relates to Rule 403 of the Federal Rules of Evidence, and the Texas Court of Criminal Appeals and the Texas Supreme Court's caselaw relates to Rule 403 of the Texas Rules of Evidence. The Rules are substantially similar.

Under Rule 403 of the Texas Rules of Evidence, a trial court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Our analysis is guided, though not limited, by the following factors, known as the *Montgomery* factors: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Mechler*, 153 S.W.3d at 440; *see Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990) (op. on reh'g).

Other than arguing that better expert witnesses existed, Eldred fails to direct us to what unfair prejudice he suffered as a result of Dickeson's testimony. Eldred argues,

> [T]he proper way to introduce such testimony would have been through the forensic interviewer, Missy Davison, who has the same qualifications as Karrah Dickeson, and could've testified as to the grooming process, if that testimony were relevant and less prejudicial than probative. However, the State instead offered such testimony through a witness who never even spoke with the alleged victim in this case, and knew nothing of what was alleged to have taken place between Appellant and the victim.

The Texas Court of Criminal Appeals has recognized "grooming" of children for sexual molestation as a legitimate subject of expert testimony under Rule 702 of the Texas Rules of Evidence. *Morris v. State*, 361 S.W.3d 649, 669 (Tex. Crim. App. 2011); *see* TEX. R. EVID. 702. As noted above, the court has approved of expert witnesses testifying even when they lack personal knowledge of the facts in a case. *See Tillman*, 354 S.W.3d at 439.

What is the probative value of the evidence? How compellingly does the evidence serve to make a fact of consequence more or less probable? The trial court in this case could have reasonably concluded that the inherent probative force of Dickeson's testimony was considerable

14

since the testimony explained how sexual predators establish and assert control over their child victims. Such knowledge is outside the common experience of most jurors, and expert testimony can assist the jurors in understanding how sexual predators groom their victims. This factor favors admission of the testimony.

What is the potential to impress the jury in some irrational but nevertheless indelible way? Eldred argues that Dickeson's testimony clearly impressed the jury, causing them to make irrational conclusions. Because Dickeson had not examined Keilburg, Eldred argues that Dickeson's testimony encouraged the jurors to engage in speculation and to assume, based on the presence of any of the characteristics of grooming, that Eldred must be guilty. We disagree. The testimony was directly related to the charged offense, and the only thing inflammatory about the testimony was directly related to the nature of the offense. While the testimony may have been prejudicial, it was not "unfairly prejudicial."

Further, the amount of time needed to develop Dickeson's testimony was minimal. Dickeson's testimony spans approximately eleven pages of a six-volume reporter's record. The State developed the evidence quickly and with minimal distraction. This factor favors admission of the evidence.

What was the State's need for this evidence? Did the State have other probative evidence available to it to help establish the facts at issue and were the facts related to an issue in dispute? Eldred argues that the availability of Davison negated the State's need for Dickeson's testimony. As highlighted by the State during oral argument, the decision of which expert would be most beneficial is generally a matter of trial strategy. Although Davison's availability may have

reduced the State's need for Dickeson's testimony, the record does not contain a comprehensive comparison of the credentials of Davison and Dickeson. The State's evidence likely would have been legally sufficient without Dickeson's testimony, but the testimony was relevant, and the witness was not shown to have been unqualified. Neither the State nor the defendant is constrained to use only one witness to prove a fact of consequence.

We cannot conclude that the probative value of Dickeson's testimony was substantially outweighed by the danger of unfair prejudice or by needless presentation of cumulative evidence. The trial court did not abuse its discretion.

## IV.  Eldred Failed to Preserve Error Related to Exclusion of Prior Sexual Abuse Evidence

Eldred's final point of error complains that the trial court abused its discretion in excluding evidence that Keilburg had been previously abused on two occasions by other adult males. The Texas Rape Shield Law includes an explicit exception for evidence "that is necessary to rebut or explain scientific or medical evidence offered by the State." TEX. R. EVID. 412. The State introduced evidence that Keilburg's hymen was no longer intact. On appeal, Eldred claims that the evidence concerning the prior two instances of abuse should have been admitted to rebut the medical condition of Keilburg's hymen. We conclude Eldred has failed to preserve the medical exception argument for appellate review.

Eldred's first request to introduce evidence of the prior abuse clearly raised the issue of the medical evidence exception. Eldred argued at trial,

> Lastly, I think that the testimony by this witness that the alleged victim's hymen was not intact opens the door to prior sexual contact under the State's Motion in Limine. The jury is going to be left with the thought that Zack Eldred was the one

16

that caused her hymen not to be intact, whereas she's at least had two prior molestations by two different men.

Eldred, though, never secured a ruling on this objection. After a discussion with the trial court and the State, Eldred withdrew this objection and opted, instead, to question the witness, Kim Basinger, a Sexual Assault Nurse Examiner, concerning other causes of the hymen not being intact. The following colloquy occurred:

[Defense Counsel]: All right. Then I'll just do it on cross.

THE COURT: So you're withdrawing it now?

[Defense Counsel]: Yes, sir.

THE COURT: Your last one?

[Defense Counsel]: Yes, sir.

THE COURT: All right.

Basinger testified in the presence of the jury, "Anything that might penetrate the female sexual organ could cause injury to the hymen and as well as other structures." Basinger also agreed that this "could include non-sexual activity, such as sporting activities or the like."

After Keilburg testified at trial, Eldred once again sought to present evidence of the prior abuse, though he justified the request differently the second time. Keilburg had testified, "He started rubbing me, and then he started pulling down my pants. And then that's when he put his mouth on my vagina, and I was a little bit nervous at first, you know, because it's the first time I had done anything like that."

17

A few minutes later, Eldred argued that this testimony opened the door to the two instances of prior sexual abuse.

> Your Honor, based on the witness's statement, this is what I wrote down, that this was the first time I had done anything like that, I would submit that the time when she was victimized by her father and her stepfather are now ripe for cross-examination. I would ask that I be able to cross-examine her based on that. I don't think that opens any doors to Zack Eldred's extraneous offenses just based on the witness's testimony.

Keilburg was questioned outside the presence of the jury. Keilburg initially claimed to remember the two incidents of prior sexual abuse—one that occurred when she was two and the other that occurred when she was five—but eventually testified that her mother told her about the incidents. Eldred did secure a ruling on his request to use evidence of prior sexual abuse in cross-examining Keilburg; the trial court overruled the request.

It is well established that an issue raised on appeal must be the same issue raised by the objection asserted at trial. TEX. R. APP. P. 33.1(a); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (holding nothing preserved for review if objection at trial does not comport with issue on appeal). The defendant's objection must "'let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

The only issue raised on appeal is that evidence regarding the victim's prior sexual history was admissible to rebut the State's medical evidence. Because Eldred's first objection was withdrawn, our inquiry concerns whether the second objection independently raised the

medical evidence exception or somehow incorporated the grounds of the first objection. The second objection makes no reference to the victim's hymen, to medical evidence, or to any medical condition. It contains neither an explicit nor an implicit reference to medical evidence. Further, the medical exception to the Rape Shield Law is not apparent from the context. *See id.* (finding that error preserved "if meaning is adequately conveyed by context"). The objection clearly confines itself to Keilburg's testimony with the phrase "based on the witness's testimony." This phrase negates any argument that the first objection was incorporated into the second objection and negates any conclusion that the medical evidence complaint was implicit from context. None of the statements made by the trial court indicate an intent to rule on the medical evidence exception.

The policies of error preservation have not been satisfied under these circumstances. *See id.* at 884–85 (finding that error preserved if record establishes preservation policies were satisfied). The error argued on appeal is not the same as the objection ruled upon by the trial court, and we conclude that Eldred's third point of error has not been preserved for appellate review. Even if the objection was preserved, the testimony of the child is not medical or scientific evidence and, therefore, was not subject to rebuttal on that basis.

## V.    Conclusion

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:    January 29, 2014
Date Decided:      March 5, 2014

Publish