

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00305-CR

DAVID WILBANKS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. F16-1258-16

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant David Wilbanks appeals his convictions and sentences for sexual assault and for continuous sexual abuse of a child. Wilbanks raises

---

[1]*See* Tex. R. App. P. 47.4.

seven issues challenging various evidentiary rulings by the trial court.[2]  Because Wilbanks's complaints are either not preserved for our review or do not raise any reversible error, we will affirm the trial court's judgment.

## II.  BRIEF FACTUAL AND PROCEDURAL BACKGROUND

When she was fourteen years old, Gloria[3]—who had lived with Wilbanks from time to time while he financially and emotionally supported her family—told her best friend's mother that Wilbanks had repeatedly performed sexual acts with her, beginning with fondling when she was six years old and continuing until the time of her outcry.  At the urging of her friend's mother, Gloria told her own mother, who contacted the police.

As part of an investigation by both the police and Child Protective Services, Lori Nelson conducted a forensic interview of Gloria.  During the interview, Gloria provided details about what Wilbanks had done to her.  Gloria told Nelson that Wilbanks began digitally penetrating her when she was six and that he began having intercourse with her when she was about eight or nine, which continued until she was fourteen.

Ultimately, a grand jury issued a three-count indictment charging Wilbanks with (1) indecency with a child by engaging in sexual contact with Gloria when

---

[2]Wilbanks's contentions are sometimes urged under more than one issue; we address them and the nuanced variations between them as necessary to dispose of all Wilbanks's issues and overlapping arguments.

[3]We use a pseudonym to refer to the complainant.  *See McClendon v. State,* 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

she was younger than seventeen (Count One); (2) continuous sexual abuse of Gloria before she turned fourteen (Count Two); and (3) sexually assaulting Gloria when she was younger than seventeen (Count Three). *See* Tex. Penal Code Ann. §§ 21.02, 21.11(a)(2), 22.011(a)(2)(C) (West Supp. 2017). After a trial, a jury found Wilbanks not guilty of Count One but guilty of Counts Two and Three and assessed his punishment at fifty years' confinement for Count Two and at twenty years' confinement for Count Three. The trial court sentenced Wilbanks in accordance with the jury's assessment and ordered the sentences to run consecutively. This appeal followed.

### III. STANDARD OF REVIEW AND LAW ON PRESERVATION[4]

A trial court's decision concerning the admission or exclusion of evidence and concerning the extent of cross-examination is reviewed under an abuse-of-discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (concerning the admission or exclusion of evidence); *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App.) (concerning the extent of cross-examination), *cert. denied*, 522 U.S. 994 (1997). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997).

---

[4]These two standards of review apply to Wilbanks's issues on appeal—because they all challenge evidentiary rulings—and to the State's numerous contentions on appeal that many of Wilbanks's issues are not preserved for our review. Consequently, we set forth these standards once but apply them throughout the analysis sections of our opinion.

3

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016).  The proponent also has the responsibility to "at the earliest opportunity, [do] everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question."  *Bonilla v. State*, 452 S.W.3d 811, 817 (Tex. Crim. App. 2014).  A complaint is not preserved "if the legal basis of the complaint raised on appeal varies from the complaint made at trial."  *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  To determine whether a complaint on appeal comports with a complaint made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time.  *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).  A reviewing court should not address the merits of an issue that has not been preserved for appeal.  *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

## IV. REFUSAL TO PERMIT QUESTIONING OF GLORIA ABOUT INSTANCES OF SEXUAL TOUCHING OR SEXUAL BEHAVIOR BY OTHERS

In his first issue, Wilbanks contends that the trial court violated his Confrontation Clause and Due Process rights under the United States Constitution by refusing to permit him to cross-examine Gloria "about other

4

instances in which she alleged inappropriate touching and revealed it to her family."  Wilbanks contends this allegedly erroneous ruling constitutes reversible error because the evidence went to Gloria's credibility[5] and was admissible to correct a false impression created by Gloria—that she did not make an earlier outcry because she was scared and did not know what to do.  The State argues that Wilbanks failed to preserve his Confrontation Clause and Due Process complaints because he did not raise them in the trial court.  We first address the State's lack-of-preservation contentions.

### A.  Confrontation Clause Violation and Due Process Complaints Not Preserved

Prior to voir dire, Wilbanks's counsel informed the trial court that Gloria had referenced three incidents involving three other perpetrators during Nelson's forensic interview of her.[6]  Wilbanks requested permission to voir dire the jury "about a credibility issue if someone makes allegations against multiple persons versus one person" despite the motion in limine granted for the State concerning this issue.  The trial court voiced concern that the proposed question would be an impermissible commitment question and that it would also violate rule 412.  *See* Tex. R. Evid. 412.  The trial court told Wilbanks's counsel that she could ask the

---

[5]To the extent that Wilbanks contends the Confrontation Clause was violated by his inability to attack Gloria's credibility concerning whether she knew how to report inappropriate touching, we address this credibility argument with his false-impression argument.

[6]The interview was not admitted into evidence.

5

panel about credibility in general but not in reference to whether a person had made allegations against others in the past.

Wilbanks requested a bench conference during his cross-examination of Gloria; he sought the trial court's permission to cross-examine Gloria about the three incidents involving other alleged perpetrators. Specifically, Wilbanks argued that he wanted to establish for the jury that with those incidents, Gloria had told someone right away:

> [Wilbanks's Counsel]: . . . I think it's important that the jury know that she has had situations in which she had been -- I mean, I know this is tough territory, Your Honor. However, she was not hesitant to reveal inappropriate touching in these other three instances. And I think the jury needs to hear that.

> THE COURT: For what purpose?

> [Wilbanks's Counsel]: Because she's acted like, I'm scared, I didn't know what to do. Yet she had three other incidences that happened even younger than six years of age that she knows how to respond to those situations. So she can't -- and one, under oath, *she can't say without being confronted about it that she doesn't know what to do about it when she has three previous incidences where she reveals right away*.

> THE COURT: *Isn't that trying to impeach her as to a collateral matter?*

> [Wilbanks's Counsel]: It's not a collateral matter, Your Honor. She's testified --

> THE COURT: It's not in this case. Doesn't involve this Defendant. Doesn't involve the allegations made in this case.

> [Wilbanks's Counsel]: It involves her ability to make claims about what happened to her. *Because if she's now just saying that all these things happened and she didn't know what to do, that's dishonest because she does know what to do. And that is not a*

6

*collateral matter here. That goes straight to the heart of her credibility.*

THE COURT: Response?

[State's Counsel]: I don't think that it's relevant, Your Honor. And it is a kind of a way to attack her. As far as these other allegations go, at the end of the forensic interview, the forensic interviewer usually asks, Oh, and after what we've talked about, were there any other instances where someone has touched you inappropriately. And she revealed other instances.

Those other instances haven't been things that haven't been -- it's not that they're not substantiated. The police investigated this certain particular incident. And as far as when she -- in the forensic interview she makes claims of telling her mom about [an incident] and telling her brother about when another [person] touched her.

The last situation was when she was a teenager. And the first time that she had told the -- it was in the forensic interview, I believe, as to that. But this all just seems not relevant. And it just seems to prejudice the jury to these other claims made against other individuals. It's not relevant to this Defendant.

. . . .

[Wilbanks's Counsel]: *Your Honor, this goes directly to this witness's credibility. . . .*

When she's telling this jury -- and I hate to do this in front of her because it feels like child abuse to me. But when she tells this jury that she didn't know what to do or when the first thing happened, she ran out and brothers were right there. She says nothing. And she acts like she didn't know what to do. Yet three different times she knows what to do. That's absolutely relevant to this case. Completely relevant.

THE COURT: Prior to that occasion?

[Wilbanks's Counsel]: Yes.

THE COURT: Well, I thought we just heard that one of them was since she's been a teenager?

7

[Wilbanks's Counsel]: I'm sorry, one of them was when she was a kid before . . . .

THE COURT: That's prior to the first incident that happened . . . ?

[Wilbanks's Counsel]: Regardless, we don't know when the actual situation --

THE COURT: Maybe none of those other people told her not to say anything.

[State's Counsel]: That's right.

THE COURT: I don't know. I don't know what the facts are of those other instances. And I think it's going to be -- it's very prejudicial. And I don't think that it's proper fodder for impeachment. And I'm not going to let you ask her about it. [Emphasis added.]

Thus, at trial, Wilbanks's counsel urged the trial court to allow her to question Gloria about the incidents involving other perpetrators to show that Gloria was being untruthful when she testified that she had not told anyone about the sexual abuse by Wilbanks because she was scared and did not know what to do. The trial court's questions and responses indicate that the trial court understood the main focus of Wilbanks's argument to be Gloria's credibility, which gave rise to the trial court's concern about proper impeachment. *See Resendez v. State*, c, 315–16 (Tex. Crim. App. 2009) (analyzing responses of trial court and State in context to determine what each understood appellant's complaints to be).

Wilbanks's trial objection did not clearly articulate Confrontation Clause or Due Process grounds, nor does the context of the exchange indicate that either

8

the trial judge or the State understood that Wilbanks's objection was based on Confrontation Clause or Due Process grounds. Although Wilbanks's counsel referred to "confronting" the witness, it was in the context of arguing that Gloria had left a false impression with the jury and should be questioned about whether she was telling the truth about being scared and not knowing what to do; that is that he should be able to impeach her concerning her truthfulness. Because Wilbanks's Confrontation-Clause and Due-Process-rights appellate arguments were not raised at trial, they were not preserved for our review. *See Leza v. State*, 351 S.W.3d 344, 360–61 (Tex. Crim. App. 2011) (holding that appellant failed to preserve constitutional argument raised on appeal because "he never alerted the trial court in any way that exclusion of the statement would violate any federal constitutional right"); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("Because [appellant] 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' this rationale.").

Wilbanks's evidentiary arguments in the remainder of his first issue—that the subject matter is relevant to Gloria's credibility, is not substantially outweighed by a danger of unfair prejudice, and is admissible to correct a false impression—comport with the objections he made in the trial court and are therefore preserved for our review.

9

## B. Evidentiary Complaints Were Properly Overruled

We now review whether the trial court abused its discretion by not permitting Wilbanks to question Gloria about the incidents involving other perpetrators after she allegedly put her credibility in question and created a false impression by testifying that she did not know what to do after Wilbanks sexually abused her.

Specific instances of conduct cannot be used for impeachment "except to expose bias, correct any affirmative misrepresentations made on direct examination, or demonstrate lack of capacity." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). When a witness leaves a false impression concerning a matter relating to her credibility, the opposing party is allowed to correct that false impression. *See Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990). Courts, however, construe this false-impression exception narrowly. *Clay v. State*, 390 S.W.3d 1, 13 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *James v. State*, 102 S.W.3d 162, 181 (Tex. App.—Fort Worth 2003, pet. ref'd)).

Here, on direct examination, Gloria testified that Wilbanks's sexual abuse of her had extended from when she was six years old until the time of her outcry when she was fourteen years old. She testified that Wilbanks had told her not to tell anyone about what he did and that he had threatened to kill himself if she did tell anyone. Gloria said that Wilbanks would make her perform sexual acts in exchange for food or other items and that she did not receive spending money

10

from her mother. Gloria told her best friend about the abuse because she "was just tired of it" and did not want to "deal with it" anymore. Gloria also testified that Wilbanks was like a father to her, that she loved him and did not want to get him in trouble, and that she was hesitant to tell her mother because Gloria knew her mother would be mad. Gloria did not say she was scared to tell an adult about sexual abuse in general or that she did not know how to do so.

Wilbanks's credibility argument is that Nelson's testimony—that Gloria told her at the end of the interview of three sexual incidents involving other perpetrators—was relevant to Gloria's credibility "because [he, Wilbanks] produced evidence that one of these other accusations was false." Wilbanks claims he established this falsity via a defense exhibit admitted for record purposes only—a letter from a person against whom Gloria had made an accusation during her forensic interview. The letter was written by the father of a different friend of Gloria's, and in it, he admits making an inappropriate comment to Gloria but does not admit any sexual acts. Nelson testified on voir dire outside the present of the jury essentially that her question to Gloria during the interview was a query about other instances of inappropriate *looking at Gloria's body*, as well as inappropriate sexual acts; specifically, Nelson testified that she always asks whether "anyone else has ever *looked at or touched* their body." [Emphasis added.] Thus, the fact that the letter does not admit to sexual acts with Gloria does not establish that Gloria's identification of this man in answer to Nelson's question—which included the query of whether anyone else had *looked at*

11

*Gloria's body*—was false. In the absence of proof of falsity, evidence that Gloria made other allegations of abuse is inadmissible. *See Puderbaugh v. State*, 31 S.W.3d 683, 687 (Tex. App.—Beaumont 2000, pet. ref'd) (holding that trial court did not abuse its discretion by preventing appellant from questioning the complainant about prior accusation of sexual abuse because there was no evidence to support that such accusation, if made, was false); *Hughes v. State*, 850 S.W.2d 260, 262–63 (Tex. App.—Fort Worth 1993, pet. ref'd) ("When there is no evidence that the complainant made false accusations, any evidence concerning the accusations is inadmissible."); *cf. Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000) (holding that even prior false accusations of abuse do not "tend to prove or disprove any of the elements of rape").

Concerning his false-impression contention, Wilbanks argues that on direct examination, Gloria created a false impression with the jury that she did not know how to report sexual abuse when she testified that she was scared and did not know what to do. Wilbanks asserts that Gloria's statement that she did not know what to do was false because she had reported other instances of abuse immediately. The alleged fact that Gloria immediately told people about one-time inappropriate incidents with other alleged perpetrators with whom she did not live does not make her testimony that she did not know what to do in this situation—involving eight years of ongoing sexual abuse by Wilbanks, a man with whom she lived, who was like a father to her, and whom she loved—false or

12

misleading. Thus, there was no false impression to rebut.[7] *See Ex parte Robbins*, 360 S.W.3d 446, 462 (Tex. Crim. App. 2011) (holding that medical examiner's testimony was not false and did not create a false impression), *cert. denied*, 566 U.S. 986 (2012); *Caldwell v. State*, 356 S.W.3d 42, 51–52 (Tex. App.—Texarkana 2011, no pet.) (looking at questions within the context of the record and determining that answers given by State's witness during cross-examination did not create a false impression about his arrest history and did not open door to impeachment).

Because Gloria's credibility was not in dispute and because her testimony on direct examination that she did not know what to do did not create a false impression, the trial court correctly determined that it should not permit Wilbanks to question Gloria about the incidents of sexual touching or behavior by other perpetrators that she had mentioned during her forensic interview.[8] We overrule Wilbanks's first issue.

---

[7]Wilbanks makes a one-sentence argument that "even without a showing that these accusations were false, they were admissible in evidence under the doctrine of chances. *See Hammer v. State*, 296 S.W.3d 555, 569–70 (Tex. Crim. App. 2009)." Wilbanks's argument based on the doctrine of chances was not preserved for our review because he did not object on that ground in the trial court. *See* Tex. R. App. P. 33.1(a); *Douds*, 472 S.W.3d at 677.

[8]Because we uphold the trial court's ruling, which implies that questions of Gloria about the incidents of sexual touching or behavior by other perpetrators were not relevant, we need not address the rule 403 argument that Wilbanks includes within his first issue. *See McDonald v. State*, No. 02-13-00483-CR, 2015 WL 2353307, at *4 (Tex. App.—Fort Worth May 14, 2015, no pet.) (mem. op., not designated for publication) ("Evidence that a child has made accusations of sexual abuse against another is not relevant or admissible in the absence of

## V. REFUSAL TO PERMIT QUESTIONING OF FORENSIC INTERVIEWER ABOUT THE SEXUAL INCIDENTS INVOLVING OTHER PERPETRATORS

In his second issue, Wilbanks argues that the trial court abused its discretion by not permitting him to question Nelson in front of the jury about instances in which three other individuals had acted sexually toward Gloria because this wrongful limitation of his right to cross-examine witnesses violated his Confrontation Clause and Due Process rights under the United States Constitution, this testimony was permissible under the rule of optional completeness, and the State opened the door to this testimony by eliciting testimony about the reliability of Gloria's forensic interview. The State responds that none of these grounds were raised at trial.

At trial, Wilbanks's counsel asked to take Nelson on voir dire during cross-examination:

> [Wilbanks's Counsel]: Your Honor, during the course of the forensic interview with this witness, this complaining witness indicated that she had three other instances of inappropriate touching throughout the course of her life. And as we noted earlier on the record that we believe that her reaction to those previous incidences show[s] a falsehood for her testifying in front of this jury that she did not know how to respond when she's making the accusations against this Defendant.
>
> And so I want to make a bill with this witness that these allegations came forth during the course of this interview and how the complaining witness told her she responded to those allegations.

---

evidence that those other accusations were false."). *See generally* Tex. R. Evid. 403 (excluding otherwise *relevant* evidence if probative value is outweighed by danger of unfair prejudice).

THE COURT: Okay. You may do this at this time.

At the conclusion of the voir dire examination, the trial court stated, "Okay. My ruling is still the same regarding those other instances. And I don't believe that is admissible in front of the jury."

As with the colloquy regarding whether defense counsel could question Gloria about the instances in which other perpetrators had acted sexually towards her, Wilbanks did not raise a constitutional complaint to the limitation of the forensic examiner's testimony in the trial court. Thus, Wilbanks's Confrontation Clause and Due Process complaints as to excluded testimony of the forensic interviewer were not preserved for appeal. *See Leza*, 351 S.W.3d at 360–61; *Reyna*, 168 S.W.3d at 179. Likewise, Wilbanks's counsel did not argue in the trial court that the evidence was admissible under the rule of optional completeness or that the evidence was admissible because the State had opened the door by eliciting testimony about indicia of reliability regarding Gloria's forensic interview; thus, Wilbanks did not preserve these complaints for our review.[9] *See* Tex. R. App. P. 33.1(a); *Douds*, 472 S.W.3d at 677.

Accordingly, we overrule Wilbanks's second issue.

---

[9]Similarly, Wilbanks's one-sentence argument—that the forensic interviewer left the jury with a false impression when she testified that she had ended Gloria's interview with "a neutral topic" when in fact she had asked Gloria about whether anyone else had ever looked at or had touched her body, eliciting information about three other perpetrators—was not preserved at trial. *See* Tex. R. App. P. 33.1(a); *Douds*, 472 S.W.3d at 677.

## VI. OUTCRY TESTIMONY IS ADMISSIBLE

In his third issue, Wilbanks argues that the trial court reversibly erred by admitting Gloria's statements to her best friend's mother under the outcry statute's exception to the general inadmissibility of hearsay. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2017). Wilbanks contends that Gloria's outcry was not admissible under article 38.072 because the circumstances of the outcry, including Gloria's age when she made it, do not show that it was reliable. Wilbanks also contends within his third issue that the admission of Gloria's outcry constitutes inadmissible bolstering. The State responds that Wilbanks did not preserve these complaints for appeal.

### A. Wilbanks's Timing and Circumstances Complaints Are Not Preserved; Wilbanks's Age Complaints Misconstrue the Statute

Wilbanks argues that, "based on [Gloria's] age and the timing and circumstances of her statements to [her friend's mother], the trial court could not reasonably have found that the statements were reliable."

At trial, Wilbanks objected that article 38.072 requires that a complainant be under the age of fourteen before a statement is admissible as an outcry:

> [Wilbanks's Counsel]: . . . [M]y reading of that statute indicates that the outcry has to be with a child who is under fourteen years of age. And the complaining witness's age at the time of the outcry was fourteen. So I don't know that outcry applies in this situation.
>
> . . . .
>
> [State's Counsel]: So the statute that we're talking about is Article 38.072. And it does say, if you read the statute, the only language that it has is in regards to the actual conduct. And it says that this

16

article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code. If committed against a child younger than fourteen years of age or a person with a disability. So it's actually referring to when the conduct itself was committed.

. . . .

[Wilbanks's Counsel]: . . . But that should also include that there has to be a declaration by the Court that the child is unavailable. And that obviously is not part of -- I'm assuming it's part of the State -- the State isn't saying that the child is unavailable to testify.

[State's Counsel]: . . . [W]e actually have the child here to testify.

. . . .

[Wilbanks's Counsel]: . . . My argument to the Court would be number one, that it's clear from the legislative intent that they want to have this ability by the State for a child who is under the age of thirteen. *And because they obviously believe that once you get to the ages of fourteen and older that the possibility of deceit is higher because children of a higher age have more of an understanding of the impact of their statements*.

So I would submit to the Court that *because the complaining witness in this case was over fourteen, fourteen-and-a-half, that this is far beyond the scope of what the legislative intent was for 38.072 as it made it clear in the opening paragraph of the statute. And I don't think that bootstrapping to try to get more evidence in just because it's hearsay doesn't necessarily indicate that it's any more reliable than if the witness testifies herself*.

So I would just submit to the Court that this is not [sic] hearsay, and it does not fall under 38.072. And that any evidence that is submitted under that section is both hearsay and bolstering.

THE COURT: Okay. And response?

[State's Counsel]: And my response would be it's not specifically spelled out in the statute any intent as to the age of the child at the time that they're giving -- or making their outcry. What's specifically

17

spelled out is the age of the child at the time the offense is committed.

The Court's still got to make a determination from our hearing whether the outcry testimony is reliable based on time, content[,] and circumstances. And with it not specifically spelled out, and with the prior Court's rulings, I think the Court is allowed to make that determination.

THE COURT: The 38.072 subsection 3-C -- I get lost in all those different subsections. 3, talks about the child being available to testify so the statute contemplates that the child would actually testify as well as there being the possibility that an outcry statement would be admitted. Isn't that true . . .?

[Wilbanks's Counsel]: Yes, Your Honor.

THE COURT: Okay. All right. The Court will overrule that objection. . . .

[Wilbanks's Counsel]: May I just make one more argument for the record, Your Honor?

THE COURT: Sure.

[Wilbanks's Counsel]: . . . I believe that the legislative intent is clear due to the fact that there is another section in the same part of the code which indicates that -- the actual legislative wording is that the outcry has to be made within twelve months of the actual offense, and that's for someone who is over seventeen years of age.

*So I believe that this is clear from the external laws and the laws that are -- I mean, the procedures that are outlined prior to 38.072 and subsequent to 38.072, that the legislative intent was not to have [the] outcry deemed reliable for anyone over fourteen years of age.*

THE COURT: That's not in 38.072.

[Wilbanks's Counsel]: No, Your Honor. It's, I think, 071. . . .

THE COURT: Well, I think that only applies when a child is actually unavailable. Isn't that what 38.071 is applicable to?

18

[State's Counsel]: Recorded testimony, I believe.

. . . .

THE COURT: That would be as if they were going to offer any statements, videotape or otherwise[,] and the child was not actually here or available for some legal reason.

[Wilbanks's Counsel]: Correct. And I'm not referring to that section. I'm referring to the other section that says that an outcry of sexual assault has to be made within one year of the offense, for a child -- for a person who is not seventeen years of age or older. In other words, I'm saying that the legislature made it clear that there's certain ages that they delineated to have import in the law.

So that's what I'm just making clear for the record. . . . [Emphasis added.]

The colloquy above reflects that Wilbanks's counsel did not object on the ground that the timing and circumstances of Gloria's statement reflect a lack of reliability that prevent its admission under article 38.072; instead, she argued that article 38.072 itself compels a conclusion that an outcry by a complainant older than fourteen is inherently unreliable. Because Wilbanks's "timing and circumstances" arguments on appeal do not comport with his objection at trial, he did not preserve these complaints for appeal. *See Lovill*, 319 S.W.3d at 691–92.

Moreover, to the extent Wilbanks argues in his brief that the trial court abused its discretion by admitting the outcry because Gloria was fourteen years old when she made the statement, his "age" argument misconstrues article 38.072. Article 38.072 applies when the offense is committed while the victim is younger than the specified statutory age—younger than fourteen years of age—

19

or a person with a disability and the victim makes the outcry before her eighteenth birthday. *See Eldred v. State*, 431 S.W.3d 177, 183 (Tex. App.—Texarkana 2014, pet. ref'd). Although Gloria was fourteen years old when she made the outcry to her best friend's mother, Gloria was under the age of fourteen when the offense was committed, and she made the outcry before her eighteenth birthday. Accordingly, the trial court did not abuse its discretion by admitting Gloria's outcry statements. *See id.* (holding that outcry made when victim was fourteen years old was admissible).

### B. Outcry Did Not Constitute Improper Bolstering

Wilbanks also complains on appeal that the outcry evidence constitutes inadmissible "bolstering." According to Wilbanks, the only probative value of the evidence was "to convince the jury that [Gloria's] allegations were truthful and worthy of credit." Because Wilbanks's argument on appeal comports with his complaint at trial that the outcry evidence was not any more reliable than Gloria's own testimony, he has preserved this complaint for our review.

In addressing a bolstering objection in the article 38.072 context, the Dallas Court of Appeals has held,

> Although article 38.072 does not mention bolstering, nothing in the statute requires that the child complainant first be impeached before the outcry statement can be admitted into evidence. To the contrary, the statute contemplates testimony from both the child victim *and* the adult witness, regardless of whether the complainant is impeached. If bolstering provided a basis for excluding outcry statements that otherwise satisfy the requirements of article 38.072, the exception would swallow the rule.

*Cantu v. State*, 830 S.W.2d 166, 170–71 (Tex. App.—Dallas 1992, no writ). The *Cantu* court concluded that article 38.072 provides for the admission of outcry statements "regardless of their hearsay or bolstering nature." *Id.* at 171.

Because article 38.072 does not prohibit the admission of outcry statements based on bolstering, we hold that the trial court did not abuse its discretion by overruling Wilbanks's bolstering objection. *See id.* Accordingly, we overrule his third issue.

## VII. ADMISSION OF HANDWRITTEN SUMMARY NOT HARMFUL

In his fourth issue, Wilbanks argues that the trial court abused its discretion by admitting over his timely bolstering objection State's Exhibit 1—a chart listing the acts Gloria had testified to, organized by her age at the time of occurrence, which the prosecutor handwrote during Gloria's testimony. Wilbanks contends that "writing bits and pieces of [Gloria's] testimony out for the jury did nothing to make [her] testimony more or less probable than it would have been without the evidence"; in other words, he complains that it had no independent relevance. The State responds that Wilbanks did not preserve this complaint because his bolstering objection at trial was too ambiguous; alternatively, the State argues that the admission of the summary in State's Exhibit 1 does not constitute bolstering because it cannot be said that its sole purpose was to convince the jury that Gloria was worthy of credit.

After Wilbanks's counsel objected to the admission of State's Exhibit 1 on the grounds of "bolstering," the trial court asked the prosecutor why Gloria's

21

testimony alone would not be sufficient. The prosecutor then tried to ask Gloria if she thought the exhibit would assist the jury, but Wilbanks objected to that question as leading and invading the province of the jury. The trial court sustained Wilbanks's objection to the second question but then immediately overruled Wilbanks's objection to State's Exhibit 1 and admitted it.

Here, the trial judge's question indicates that she understood Wilbanks's objection to be that State's Exhibit 1 was not relevant for any purpose other than to enhance Gloria's credibility. *See Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) ("'Bolstering' may perhaps be understood . . . to be any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"). Because Wilbanks's issue on appeal is consistent with his objection at trial, we hold that he preserved his bolstering complaint.

But regardless of whether Wilbanks preserved this complaint for appeal, we nevertheless hold that any error is not reversible. Even if the trial court abused its discretion by admitting the exhibit, the error is harmless because Wilbanks does not complain, nor has he shown, that the prosecutor misled the jury or that the summary was an inaccurate recitation of Gloria's testimony. *See Wheatfall v. State*, 882 S.W.2d 829, 838–40 (Tex. Crim. App. 1994) (holding that although trial court erred by admitting five-page handwritten summary of

22

appellant's violent criminal history, error was harmless because summary was duplicative of other evidence of his criminal history and because jury had access to summarized exhibits), *cert. denied*, 513 U.S. 1086 (1995); *Markey v. State*, 996 S.W.2d 226, 232 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that error in admitting prosecutor's handwritten list of symptoms of intoxication made during witness's testimony was harmless when appellant did not argue that list was erroneous or misleading and "jury was able to accept or reject the prosecutor's characterization of the testimony as it occurred"). *See generally Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (noting general principle that trial court's erroneous admission of evidence will not result in reversal when same evidence was admitted elsewhere without objection either before or after complained-of ruling), *cert. denied*, 564 U.S. 1020 (2011). Accordingly, we overrule Wilbanks's fourth issue.

## VIII. OBJECTION TO "IMPRESSION" NOT SUFFICIENT TO PRESERVE COMPLAINT

In his fifth issue, Wilbanks contends that the trial court abused its discretion by allowing a police detective to testify that her impression of text messages between Wilbanks and Gloria "came across more as being boyfriend-girlfriend[] texts." The State responds that this complaint was not adequately preserved because Wilbanks's trial objection was too general.

On cross-examination, Wilbanks's counsel asked the detective whether she had found "anything sexual" in the text messages on Gloria's phone, to which the detective responded, "No." When the State asked the detective on

23

redirect, "The texts that were exchanged I believe you said they weren't sexual; is that true," she answered, "That's correct." The prosecutor then asked, "Did they appear, just in your experience -- I think the defense counsel asked you about telling a niece or nephew that you love them. Did the communications in those texts appear like normal?" Wilbanks's counsel objected that "normal and not normal . . . invades the province of the jury," and the trial court sustained the objection. The prosecutor then asked the detective, "The texts that you read in that communication between the individuals, what was your impression?" Wilbanks's counsel objected: "Objection to impression." The trial court overruled the objection, and the witness answered, "Kind of from my years of experience, it came across more as being boyfriend-girlfriend, texts."

On appeal, Wilbanks argues, "Impressions that are primary and for which no substituted proof is conceivable can be put in evidence, but an impression that is merely a secondary idea of that of which a more accurate idea is obtainable cannot be received." We cannot determine from the context of the exchange that this is the objection asserted by Wilbanks in the trial court or that this is what the trial court understood Wilbanks's trial objection to be. Thus, this complaint is not preserved for our review. *See Lovill*, 319 S.W.3d at 691–92. We therefore overrule Wilbanks's fifth issue.

## IX. Ex-Wife's Testimony Was Not Harmful

In his sixth issue, Wilbanks argues that the trial court abused its discretion by allowing his ex-wife to testify "that she 'thought it was a little paranoid' that [he]

24

'didn't want any young girls in the house' because he did not want to get accused of anything and did not want anybody in the house when he was alone." Wilbanks argues that his ex-wife's statement was not relevant and was not admissible as a lay opinion.[10]  The State responds that the evidence is relevant to Wilbanks's state of mind—whether he was interested in young girls or had a guilty conscience—and that it helped the jury understand his ex-wife's testimony because it showed that she thought there was no reason for Wilbanks to fear having young girls in the house; alternatively, the State argues that any error in the admission of Wilbanks's ex-wife's opinion was harmless "in light of the whole" of her testimony and when compared to the direct evidence of his offenses.

Assuming that the admission of Wilbanks's ex-wife's opinion was an abuse of discretion, we address whether such error is harmless.  *See* Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002) (requiring court that performs harmless-error analysis to review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case).  In reviewing the record as a whole, Wilbanks's ex-wife's opinion—that she "thought it was a little paranoid" that Wilbanks did not

---

[10] *See generally* Tex. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:  (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue.").

want young girls in the house when he was home alone—is not any more prejudicial than the rest of her testimony, and it is not significant in light of the other evidence of Wilbanks's guilt. Moreover, although the State emphasized in its closing argument that Wilbanks's ex-wife's testimony corroborated Gloria's testimony with respect to the family's living arrangements and Wilbanks's supervision of Gloria, the State did not mention Wilbanks's ex-wife's opinion about his reluctance to have young girls at the house when he was home alone. We conclude that in the context of the entire case against Wilbanks, the trial court's error, if any, in admitting his ex-wife's opinion testimony did not have a substantial or injurious effect on the jury's verdict and did not affect Wilbanks's substantial rights. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) ("Under the circumstances, we have a fair assurance that the evidence in question did not influence the jury or had but slight effect."); *Ellison v. State*, 494 S.W.3d 316, 330 (Tex. App.—Eastland 2015, pet. ref'd) ("To the extent that the trial court may have erroneously admitted reputation evidence, it paled in comparison to the direct evidence of Appellant's egregious conduct."). Thus, we disregard the error and overrule Wilbanks's sixth issue. *See* Tex. R. App. P. 44.2(b); *Solomon*, 49 S.W.3d at 365; *Ellison*, 494 S.W.3d at 330.

## X. NO CUMULATIVE ERROR REQUIRING REVERSAL

In his seventh issue, Wilbanks argues that even if this court does not determine that any of the complaints in his first six issues constitute reversible error, we should still reverse the trial court's judgment and remand the case

26

based on the cumulative effect of multiple harmless errors. Even assuming that the trial court erred by admitting the prosecutor's handwritten summary of Gloria's testimony and Wilbanks's ex-wife's testimony about his reluctance to have girls at the house, we do not believe that the cumulative effect of the admission of this evidence requires reversal. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."), *cert. denied*, 528 U.S. 1082 (2000); *Flores v. State*, 513 S.W.3d 146, 174–75 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Nothing in the record indicates that the State used the evidence to an unfair advantage or that the admission of the evidence deprived Wilbanks of any constitutional rights or rendered the trial fundamentally unfair. *See Flores*, 513 S.W.3d at 175; *see also U.S. v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009) (noting that cumulative-error doctrine compels relief only when constitutional errors "fatally infect the trial," depriving a defendant of fundamental fairness). We overrule Wilbanks's seventh issue.

## XI. CONCLUSION

Having overruled Wilbanks's seven issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

27

DELIVERED:  January 18, 2018