**Opinion filed August 5, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00257-CR

_____

### FERNANDO SONNY MONROY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 13251-D**

### O P I N I O N

Appellant, Fernando Sonny Monroy, was convicted of continuous sexual abuse of a child under fourteen years of age and sentenced to forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 21.02(b) (West 2019). In three issues, Appellant asserts that (1) the trial court erred in allowing a second outcry witness, Sherry P., to testify; (2) the trial court erred by permitting the prosecution to include facts outside of the evidence in its argument to the jury, over Appellant's objections;

and (3) the evidence was legally insufficient to support the jury's finding of guilt. We affirm.

*Background Facts*

In November of 2014, N.P. was with her mother, Guadalupe C., and her mother's girlfriend, Donna M., at a friend's house. Other adults and children were present, and all of the adults were outside when the children informed Guadalupe and Donna that N.P. "needed to talk" to them. Neither Guadalupe nor Donna knew what was wrong, but N.P. was nervously crying inside the house. N.P. made an outcry of sexual abuse, stating that Appellant, Donna's brother, tried to force himself on her and touched her in her breast area and between her thighs, unsuccessfully attempting to take her clothes off. N.P. stated that this was not the first time that this had happened. However, this was N.P.'s first known outcry. N.P. was approximately eight or nine years old at the time of her initial outcry against Appellant.

N.P. did not tell her mother of the incidents earlier because she was scared of Appellant. Appellant instructed N.P. not to tell her parents because they were "just playing around." She finally told her mother what was happening because she was afraid it would eventually happen to her younger sister.

N.P. believed that the sexual assaults happened at least ten times. The severity of the sexual contact increased over time. The first time N.P. remembers something happening with Appellant was either at the beginning of her first-grade year or during her second attempt at kindergarten. Appellant would put N.P. on his lap, which she thought was inappropriate. N.P. testified that when Appellant would come home from work around noon, he would pick her up by her armpits, throw her on the bed, grab her inner thigh areas, and touch her privates. N.P. felt Appellant touch her private part and move his hand around. N.P. recalls bleeding afterwards on at least one occasion. She told her mother that she was bleeding, but her mother

2

only asked whether she was engaging in sexual behavior or whether she was beginning her menstrual cycle. According to N.P., the last time Appellant sexually assaulted her was in November of 2014, just prior to N.P. telling Guadalupe and Donna.

Sherry, N.P.'s stepmother, was permitted to testify as an additional outcry witness. Sherry testified that in November of 2014, Guadalupe unexpectedly called her and N.P.'s father early on a Saturday morning and asked if she could bring N.P. to their house. Guadalupe brought N.P. to the door, handed Sherry maxi pads, and explained that N.P. had started her menstrual cycle. Sherry thought that this was odd because N.P. was only eight years old at the time. Sherry questioned N.P. throughout the day as to what was going on but did not learn what had happened until later that evening when N.P. began crying, finally telling Sherry that Appellant had been sexually abusing her.

N.P. told Sherry that Appellant's conduct started by picking her up, putting her on his lap, and pressing her down. The conduct progressed to taking N.P. to a room and throwing her on the bed before climbing on top of her. N.P. stated that when Appellant did this, she could not breathe and requested that he get off of her, but she was unsuccessful in convincing him to do so. Appellant would rub her chest, her private areas, and eventually put his fingers inside her vagina, causing her to bleed. When the outcry to Sherry was made, she and N.P.'s father took N.P. to the police station.

Appellant was subsequently indicted and convicted of continuous sexual abuse of a child under the age of fourteen. He brings three issues on appeal. We will first address Appellant's claim that the evidence was legally insufficient.

### Issue Three

Appellant asserts in his third issue that the evidence was legally insufficient to support the jury's finding of guilt. Specifically, Appellant argues that the

3

evidence does not sufficiently support a rational finding beyond a reasonable doubt that the sexual activity occurred.

*Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer

4

to that determination.  *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

*Analysis*

A person commits the offense of continuous sexual abuse of a child if (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense.  PENAL § 21.02(b).  "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), including aggravated sexual assault and indecency with a child by contact.  *Id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021.

The indictment alleged that Appellant committed sexual abuse against N.P., a child younger than fourteen years of age, by intentionally and knowingly causing the penetration of the female sexual organ of N.P. with Appellant's finger, and indecency with a child by touching the genitals of N.P. with Appellant's hand, and also by causing the male sexual organ of Appellant to contact the body of N.P. with the intent to arouse or gratify the sexual desire of Appellant.  The indictment alleged that these acts occurred during a period of more than thirty days, from August 1, 2011, through November 23, 2014, and that Appellant was more than seventeen years of age at the time.

N.P. was born in 2005.  She testified that the first time she recalled inappropriate behavior by Appellant was either when she was beginning first grade or in the middle of her second time in kindergarten.  N.P. had to repeat kindergarten, meaning her second attempt at kindergarten or her first-grade year would have taken place in 2011 or 2012.  N.P. remembers Appellant sitting down on the couch, putting N.P. on his lap, and pushing her body up and down on his "lower area."  Appellant

would do so when all other family members were out of the house and N.P. was either alone or only with her younger sister. N.P. testified that on subsequent occasions, Appellant would pick N.P. up, throw her on a bed, and climb on top of her. Appellant would grab N.P. by her inner thigh area and would touch her privates and her breasts. N.P. stated that she did not tell anyone about Appellant's inappropriate physical contact because she was too scared of Appellant to do so.

Appellant never removed his clothes, and never removed N.P.'s clothes, but would stick his hand under her clothes to touch her private areas. N.P. testified that she could sometimes see Appellant's private part through his clothes and, depending on what Appellant was wearing, could feel his private part through his pants when he was forcing himself on her. N.P. was in pain, and her vagina bled on some occasions. N.P.'s mother was aware of the bleeding and asked N.P. if she was engaging in sexual behavior, to which N.P. responded that she was not. N.P. also testified that she was not on her menstrual cycle, as she did not begin menstruating until she was eleven years old.

Appellant's actions became progressively intrusive, ultimately resulting in Appellant inserting his fingers inside N.P.'s vagina. Appellant continued his actions, disregarding requests by N.P. to stop. N.P.'s younger sister, A.P., would cry when she observed Appellant forcing himself onto N.P. N.P. testified that when other adults were present in the home, Appellant acted normal and like nothing had happened.

N.P. and her mother moved multiple times into and out of the home where N.P. had been sexually assaulted by Appellant. The last time, N.P. told her mother that she was scared to move back into that home, but did not tell her why. According to N.P.'s testimony, the sexual assault by Appellant continued once N.P. moved back into the home.

N.P. testified that the last time Appellant assaulted her was around November of 2014, just prior to N.P. telling her mother and Donna what had happened. A few weeks before her outcry, N.P. decided to tell her mother that something was going on, and she told her mother that Appellant was "acting weird." N.P.'s mother dismissed N.P.'s concerns, stating that Appellant was on drugs. N.P. finally told her mother exactly what was happening out of fear that the same thing would happen to her younger sister. N.P. testified that her mother was drunk when N.P. made her outcry and that her mother started crying when she learned the truth. N.P.'s mother and Donna did not call the police, and N.P. felt like they did not care. N.P. was then sent to stay with her father and stepmother, to whom N.P. made a subsequent outcry. Sherry, N.P.'s stepmother, testified that N.P. made her outcry when she was eight years old. N.P. was hesitant at first, but finally told Sherry that Appellant had been inappropriately touching and inserting his fingers into her private areas.

Appellant asserts that there are inconsistencies in the trial testimony that give rise to legal insufficiency: (1) that Guadalupe and Donna did not believe N.P.'s outcry; (2) that Guadalupe's testimony was not credible; (3) that Appellant's work schedule was such that he could not have committed these offenses; (4) that Appellant may not have been in Abilene at the time that N.P. claims to have been assaulted; and (5) that N.P.'s testimony that she and her younger sister were left alone and missed school was not true. While these may be defense cross-examination points, each of these claims was contested, and the jury is presumed to have weighed and resolved all factual conflicts in support of its verdict. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. In *Brooks*, the Texas Court of Criminal Appeals instructed that, when viewing the evidence in the light most favorable to the verdict, "the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323

S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326). Further "[i]t is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence." *Winfrey*, 393 S.W.3d at 768 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We disagree with Appellant's assertion that the evidence is legally insufficient to show that the sexual assaults occurred. Just the uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2020); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see also Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish element of penetration beyond a reasonable doubt). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

As stated above, the jury is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. If the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778. The jury was free to judge the credibility of Guadalupe's and Donna's testimony and resolve any conflicts in the facts presented

8

by that testimony. The jury was free to resolve any conflicts in the evidence based on the perceptions of N.P., an eight-year-old child who gave consistent event testimony, and N.P.'s testimony alone is sufficient to support a conviction for continuous sexual abuse of a child. *See Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). Accordingly, we overrule Appellant's third issue.

## *Issue One*

In his first issue, Appellant asserts that the trial court erred in allowing a second outcry witness, Sherry, to testify.

## *Standard of Review*

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

## *Analysis*

An "outcry statement" under Article 38.072 of the Texas Code of Criminal Procedure is a statutory exception to the hearsay rule in prosecutions for sex-related offenses committed against a child younger than fourteen years of age. CRIM. PROC. art. 38.072.

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted). Article 38.072 provides that outcry testimony from the first person, eighteen years of age or older, other than the defendant, to whom the child makes a statement describing the alleged offense will not be inadmissible because of hearsay, subject to certain procedural requirements. CRIM. PROC. art. 38.072, § 2(a)–(b).

The outcry exception applies "only to statements that . . . describe . . . the alleged offense." *Id.* § 2(a)(1)(A). The statement "must be more than words that give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *see Michell v. State*, 381 S.W.3d 554, 558 (Tex. App.—Eastland 2012, no pet.). To be admissible, the statement must describe the offense in some discernible manner. *Garcia*, 792 S.W.2d at 91; *Michell*, 381 S.W.3d at 558.

For the outcry exception to apply, Article 38.072 requires that (1) on or before the fourteenth day before proceedings begin, the party intending to offer the statement (a) notify the adverse party of its intent to offer the outcry statement, (b) provide the name of the outcry witness through whom it intends to offer the statement, and (c) provide a written summary of the statement; (2) the trial court hold a hearing outside the presence of the jury to determine whether the statement is reliable; and (3) the child testify or be available to testify at the proceeding. *See* CRIM. PROC. art 38.072, § 2(b).

Appellant argues that the trial court erred in allowing two outcry witnesses to testify. Specifically, Appellant asserts that Sherry's testimony was exactly the same as the outcry testimony of Guadalupe, only differing by Sherry's assumption that digital penetration had occurred. However, the State asserts that the two outcry witnesses testified as to separate instances and types of abuse, which is permitted.

Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 if the witnesses testify about different events. *Lopez v. State*,

343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citing *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd)). Thus, admissible outcry witness testimony is event-specific, not person-specific. *Eldred v. State*, 431 S.W.3d 177, 181–82 (Tex. App.—Texarkana 2014, pet. ref'd); *Polk v. State*, 367 S.W.3d 449, 453 (Tex. App—Houston [14th Dist.] 2012, pet. ref'd). Because designation of the proper outcry witness is event-specific, when a child is victim to more than one instance of sexual assault, it is possible to have more than one proper outcry witness, so long as the outcries concerned different events and were not simply repetition of the same event told to different individuals. *Robinett v. State*, 383 S.W.3d 758, 762 (Tex. App.—Amarillo 2012, no pet.); *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd); *see Ruedas v. State*, No. 11-13-00049-CR, 2015 WL 9584002, at *4 (Tex. App.—Eastland Dec. 31, 2015, pet. ref'd) (two separate outcry witnesses testified regarding different charged criminal offenses, but same occasion).

Appellant's first issue centers on whether N.P.'s outcry to Guadalupe concerned a different offense than N.P.'s outcry to Sherry. During a hearing outside the presence of the jury, Guadalupe testified that N.P. informed her of the sexual abuse while they were at a friend's house. N.P. was scared, nervous, and crying. N.P. told Guadalupe that Appellant had touched her and attempted to undress her but that he stopped when N.P.'s younger sister began crying. Guadalupe testified that N.P. claimed she had been touched between her thighs and in her breast area. According to N.P.'s outcry, this was not the first time that this had happened. The trial court determined that Guadalupe was qualified to testify as an outcry witness. *See* CRIM. PROC. art 38.072.

Later in the proceedings, Sherry was introduced, and a hearing was held outside the presence of the jury to determine whether Sherry qualified as a second outcry witness. Sherry testified that N.P. made an outcry to her while N.P. was

11

staying with Sherry and N.P.'s father. N.P. told Sherry that Appellant had been sexually assaulting her while at Appellant's mother's home. Sherry testified that N.P.'s outcry included details of occasions when Appellant came into the home, threw N.P. on a bed, and sexually assaulted her by putting his hands in her pants and rubbing her chest. N.P. stated that Appellant was putting his hands into her private areas, causing her to bleed.

Appellant's trial counsel argued that Sherry should not be allowed to serve as an outcry witness because Sherry's testimony was, in essence, "the exact same thing" as Guadalupe's testimony. Therefore, based on Guadalupe and N.P.'s collective testimony, the jury would hear no new evidence, and Sherry's testimony would only serve to inflame the jury's opinion of Appellant. However, the State argued that Sherry's testimony was in fact different than that of Guadalupe because the outcry made to Sherry included N.P.'s statement that Appellant had penetrated her vagina with his fingers. After the trial court took time to review prior precedent, Article 38.072, and Guadalupe's testimony, Sherry was allowed to serve as a second outcry witness because two different incidents were included in the two outcries: one regarding penetration, the other regarding touching.

In *Divine v. State*, the child victim—when making her initial outcry statement to her grandmother—denied that digital penetration had occurred. 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd). However, the child later told a forensic interviewer that digital penetration had occurred. *Id.* The Texarkana Court of Appeals held that the trial court did not abuse its discretion in allowing both outcry witnesses to testify because the outcries concerned different incident of offense. *Id.* The defendant took the position that some inconsistencies should cause the second outcry witness's testimony to be inadmissible. The court held that any "inconsistency would affect the believability of the outcry statements and thus affect the weight given by the factfinder to her testimony" but "did not make the latter

outcry inadmissible, or change its nature." The court reasoned that, "[a]t the simplest level, the child did not make an outcry about penetration to the grandmother, but did make such an outcry to the interviewer." *Id.*

The facts in *Divine* are analogous to the facts in this case. N.P.'s initial outcry to Guadalupe did not address the matter of penetration, while her subsequent outcry to Sherry did address penetration. Penetration was an essential element of the underlying predicate offense of aggravated sexual assault of a child as alleged in the indictment. Sherry was the first person over the age of eighteen that N.P. told about that particular offense. *See Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (citing *Garcia v. State*, 792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990)) (the outcry witness must be the first person to whom the child makes a statement that, in some discernible manner, describes the alleged offense).

This court has carefully reviewed the record. At the time of trial, N.P. was thirteen years old. It is expected that children of a young age will not serve as proficient historians as to the date, duration, and details of traumatizing events; therefore, the recollection of the timing of childhood events may be likewise impaired. The incidents of sexual abuse testified to by N.P. were consistent with what she reported to others: that they were on different days with increasing severity, ultimately to the point of vaginal penetration that induced bleeding. Regarding N.P.'s outcry to Guadalupe, the acts of Appellant without penetration were consistent with the *initial* incidents of sexual abuse related by N.P.

The time frame between the two outcries is unclear based on our reading of the record. Guadalupe indicated that the first outcry was made to her in "the summer." N.P. was not taken to Sherry's home following this initial outcry. The record reflects that the outcry to Sherry was in November, around Thanksgiving. This provides time in the interim for additional incidents of sexual abuse to have occurred before the second outcry. Regarding the latter outcry, Sherry believed that

13

the offending conduct of Appellant had last happened as late as the night before N.P.'s outcry to her. Therefore, there is evidence that the incidents of sexual abuse related in the outcries could very well have been perpetrated on separate occasions and of different severity. Accordingly, the trial court did not abuse its discretion when it permitted Sherry to testify as an outcry witness. Appellant's first issue is overruled.

## Issue Two

Appellant argues in his second issue that the trial court erred by permitting the prosecution to argue facts not in evidence, in its argument to the jury during Appellant's trial, over Appellant's objections.

## Standard of Review

A trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). We examine allegedly improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

## Analysis

"It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973) (quoting 56 TEX. JUR. 2d *Trial* § 271, at 613). "Thus, proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (citing *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Alejandro*, 493 S.W.2d at 231). "The arguments that go beyond these areas

too often place before the jury unsworn, and most times believable, testimony of the attorney." *Alejandro*, 493 S.W.2d at 232.

Appellant asserts that, by permitting the prosecution to argue—as a reasonable inference from the evidence—that Appellant could have called a better witness to defend himself against the allegations, the trial court irreversibly harmed Appellant. Furthermore, Appellant claims that, by permitting the State's argument, the trial court insinuated that Appellant had something to hide by not calling his mother, Mary Monroy, as a witness. Appellant contends that this argument was not a summation of the evidence and that it put into the jury's mind something so outrageous that it violated Appellant's constitutional right to due process of law, with the trial court's consent.

The State asserts that the argument was made in response to Appellant's claims in closing argument that there was inconsistent testimony as to when N.P. stayed at Mary's house and whether N.P. missed school while there and that it was impossible that N.P. and her sister were left alone at the house.

The prosecutor made the following argument to the jury, with the subsequent exchange from opposing counsel and the court:

> [PROSECUTOR]: But, you know, who was the one person who was probably the most stable the whole time who could have really shed light on when they stayed at Mary's house? Mary. She's been here for the whole time. She's here right now. Why didn't they call her? I mean, they did choose to call witnesses. They did. She's right there. She, among all of them, I'll even agree, is probably the most stable person because she stayed in one place the whole time. She was the safety net. It's odd they didn't call her to the stand. I think you can deduce from that what she would have said, that it wouldn't have been helpful because if it would have been helpful, that's where she'd be.
>
> [APPELLANT'S COUNSEL]: Objection, arguing outside of the evidence.

15

THE COURT: The reasonable inferences are allowed. The jury will decide whether that inference is reasonable.

The Texas Court of Criminal Appeals has held that "the prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify." *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). The Court of Criminal Appeals has also held that "a prosecuting attorney may comment in his final jury argument on the failure of a defendant to call a competent and material witness, when it is shown that such witness was available to testify on behalf of the defendant, but was not called by the defendant to testify. The failure to produce available evidence justifies an inference that it would be unfavorable to the defendant." *Albiar v. State*, 739 S.W.2d 360, 362–63 (Tex. Crim. App. 1987) (citing *Garrett v. State*, 632 S.W.2d 350 (Tex. Crim. App. 1982); *Carrillo v. State*, 566 S.W.2d 902, 913 (Tex. Crim. App. 1978); *Torres v. State*, 552 S.W.2d 821, 825 (Tex. Crim. App. 1977); *Rodgers v. State*, 486 S.W.2d 794 (Tex. Crim. App. 1972)). This rule encompasses references to the failure of the accused to call competent and material witnesses, found in the record, who could support or buttress a defensive theory. *Id.*; *see also Charles v. State*, 146 S.W.3d 204, 212 n.22 (Tex. Crim. App. 2004) (referencing the proposition favorably from *Albiar* that the "factfinder may infer from a party's failure to call an available, competent, and material witness that the witness's testimony would be unfavorable").

Additionally, we conclude that the State's argument relating to the potential testimony of Mary was in direct response to assertions made by Appellant during trial that "opened the door" to a rebuttal of this kind from the prosecution. The "invited argument" rule only applies when the prompting argument of the defense counsel goes outside the record. *See Fant-Caughman v. State*, 61 S.W.3d 25, 29 (Tex. App.—Amarillo 2001, pet. ref'd) (citing *Wilson v. State*, 938 S.W.2d 57, 60

(Tex. Crim. App. 1996)). Even though "the door may have been opened," the prosecutor "may not stray beyond the scope of the invitation." *Id.* (citing *Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. [Panel Op.] 1981)).

During closing arguments, defense counsel asserted that N.P.'s story of being secretly assaulted by Appellant while left alone at Mary's home during the daytime was "impossible" because Appellant worked during those hours and because Mary would have been present in the home. A clear implication of the argument of Appellant's trial counsel was that, since Mary was home, a sexual assault could not have been concealed. Defense counsel claimed that Appellant did not have the opportunity to be at home alone with N.P. to commit these acts because either Donna or Mary was the caregiver for N.P. at the time that these events were alleged to have happened. Further, defense counsel also claimed that it was "impossible" for N.P. to have been left home alone in the first place. Appellant's counsel argued that if N.P. was at Mary's home on a day that she was supposed to be in school, then N.P. would have been in school. Based on this portion of defense counsel's closing argument, we agree with the State's assertion that the door had been opened for argument to refute defense counsel's statements and their implications, including the intimation that Mary's presence in the home would have made committing the alleged offenses "impossible."

Furthermore, even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts into the case or were so extreme and manifestly improper that they deprived the defendant of a fair and impartial trial. *Brown*, 270 S.W.3d at 573 & n.3; *see* TEX. R. APP. P. 44.2(b). "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive Appellant of a fair and

17

impartial trial." *Brown,* 270 S.W.3d at 573 & n.3 (quoting *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

As we have said, we find that the State's argument was in direct response to Appellant's assertions during closing argument, and we hold that the trial court did not abuse its discretion in overruling Appellant's objection because the argument made by the prosecution did not "inject new and harmful facts into the case" and was not "extreme or manifestly improper." *See Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992); *see also Brown*, 270 S.W.3d at 573 n.3; *Alejandro*, 493 S.W.2d at 231. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


August 5, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.