**Affirm and Opinion Filed January 25, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00300-CR**

**No. 05-20-00301-CR**

**MIGUEL JOSE RIVERA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F19-11498-V & F16-29747-V**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Pedersen, III
Opinion by Justice Myers

Appellant Miguel Jose Rivera was convicted by a jury in cause 05-20-00300-CR of sexual assault of a child, and in cause 05-20-00301-CR the trial court adjudicated him guilty of aggravated assault with a deadly weapon. In the sexual assault of a child case, the jury assessed a punishment of 18 years, and the trial court sentenced appellant to 20 years in prison for the aggravated assault with a deadly weapon offense. Rivera raises two issues in 00300-CR regarding the admission of expert testimony and alleged jury charge error, and in 00301-CR he raises a jurisdictional issue. The State brings a cross-issue that complains of error in the

judgment in 00300-CR. We affirm the judgment in 00300-CR as modified, and we affirm the judgment in 00301-CR.

## Discussion

## 1. Expert Testimony

In his first of two issues in 00300-CR, appellant argues the trial court erred in finding expert testimony admissible. Appellant's argument is based on testimony from the State's expert, Kimberly Skidmore, the director of forensic services at the Dallas Children's Advocacy Center (DCAC), regarding the power and control model and the compliant victim dynamic in the context of child sexual abuse. Appellant contends the State failed to produce scientific or legal authority that established that the compliant victim dynamic, or that the power and control model, fall within a legitimate field of study. He also argues Skidmore's testimony did not help the trier of fact understand the evidence. The State responds that Rivera failed to preserve error, the trial court did not err, and, alternatively, any error in admitting the testimony was harmless.

Appellant was charged with sexual assault of a child in cause 05-20-00300-CR. The indictment alleged that on or about June 1, 2018, he intentionally and knowingly caused the penetration of the female sexual organ of the complainant, a child younger than 17 years of age, by means of the defendant's sexual organ. *See* TEX. PENAL CODE § 22.011.

During her testimony on direct, Skidmore offered the following explanation,

without objection from the defense, of the differences involved in interviewing a "compliant victim" rather than a general victim:

> So to define a compliant victim, the word compliant is basically used for lack of a better word. It just means that the victim thinks that they are in a relationship with that perpetrator. So I would say that there's kind of a lot on the line when you're interviewing that type of victim because not only—in our average case of course there's a lot on the line. The child is coming in and maybe talking about someone who's close to them like a family member. But it's a kind of a different dynamic when you're talking about someone you believe to be your boyfriend.

Skidmore also testified, again without objection, about how a victim's dependence on her abuser for things like food, clothing, shelter, and money could affect whether the victim would disclose the abuse. A few moments later, the State asked if there were "any particular behaviors in teenagers that could make them more susceptible to being a compliant victim," and defense counsel objected "that calls for an expert opinion and this witness has not been tendered as an expert."

After the defense objected, the trial court held a hearing outside the presence of the jury. Skidmore testified as follows about the compliant victim dynamic and the power and control model:

> Q. [STATE:] Okay. Ms. Skidmore, I believe my question was, Are there any behaviors in teenagers that can make them more susceptible to being a compliant victim?
>
> A. Yes.
>
> Q. What types of behaviors?
>
> A. Teenagers have, whether it's perceived or actual, sometimes they have a distorted view of relationships with their parents or other people

in their life, and so it can sometimes cause them to seek that support elsewhere. And again, whether that, whether that relationship is dysfunctional, whether that's perceived or actual, we know that teenagers think that sometimes about their parents. Teenagers are also in a place where they're exploring their sexuality, and teenagers can also be exposed to more things sexual in nature than kids.

Q. What about teenagers that are runaways?

A. That's especially hard because those teenagers that are runaways are also looking for their basic needs to be met outside of their home, which can cause them to be susceptible to get in a relationship with someone even just to get those basic needs met.

Q. When you're talking about compliant victims, does the age difference between a victim and the perpetrator have anything to do— I guess or could that be a factor in them being a compliant victim?

A. I think when there is an age difference, teenagers look to adults for answers and so there's a perceived kind of power differential, power differential, excuse me, and so there is a perceived, like, power-control dynamic.

Q. Have you ever heard of Power and Control model?

A. Yes.

Q. Okay. What is the Power and Control model?

A. We see this a lot in intimate partner violence. Some of it I do know also translates to the compliant victim dynamic. And what that means is that the perpetrator has, like, power and control over that victim.

A lot of times the misconception with intimate partner violence is that there has to be some sort of physical assault, when really we know that there are steps to get to that place and that's when the power starts. So it could start as early as controlling bank accounts. A lot of women who are victims of intimate partner violence you'll see that they have children who are very close in age. And that's a way that, you know, the perpetrator is able to keep them home per se. Those dynamics are similar in compliant victim dynamics because of what we also talked about with sometimes these teenagers need their basic needs met, and so the person who's meeting those needs automatically has some power and control over them.

On cross-examination, the defense questioned Skidmore about her qualifications and, among other things, asked whether a compliant victim could be a willing participant, to which she responded, "Yes."

After cross-examining Skidmore, counsel reiterated his earlier objection: "Judge, for the record, I'm going to object to this witness giving expert testimony." The trial court tried to clarify the scope of the objection, and defense counsel replied that "as far as rendering an expert opinion on subjects, I object to [Skidmore's testimony] on the grounds that she's not qualified to render an expert opinion on the areas the district attorney was soliciting." He also objected that the State was attempting to "back door" in evidence of "coercive control" without evidence to support that theory. The trial court overruled the objection. When the jury returned, Skidmore largely repeated her earlier testimony out of the jury's presence about the compliant victim dynamic and the power and control model.

We conclude appellant failed to preserve error because his trial objection was untimely. Rule 33.1 requires a timely and specific objection to preserve error for appeal. TEX. R. APP. P. 33.1(a)(1); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020). In this case, by the time the defense objected to Skidmore's testimony, she had already described the compliant victim dynamic and how a victim's dependence on her abuser for food, clothing, shelter, and money affected whether the victim disclosed the abuse. The defense offered no reason for the delayed objection. Therefore, appellant failed to preserve his argument for review.

–5–

*See, e.g., Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008) ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited.").

Additionally, were we to conclude error was preserved, the trial court did not abuse its discretion in admitting Skidmore's testimony. Appellant complains that the compliant victim dynamic and the power and control model are unlike "grooming" and that the State failed to produce scientific or legal authority to establish that the compliant victim dynamic or the power and control model fall within the legitimate field of study of the behavior of teenage victims of sexual abuse. Yet all three concepts involve the behaviors of those who sexually victimize children. As this Court stated, "'grooming' . . . refers to behaviors that child molesters commonly use to create compliant and trusting victims." *Taylor v. State*, No. 05-14-00821-CR, 2016 WL 7439194, at *8 (Tex. App.—Dallas Dec. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Morris v. State*, 361 S.W.3d 649, 666–67 (Tex. Crim. App. 2011). The *Morris* court held that the grooming phenomenon is an appropriate subject for expert testimony. *Morris*, 361 S.W.3d at 668; *Taylor*, 2016 WL 7439194, at *8. Several Texas courts have also noted that asserting power and control over child victims is one of the grooming behaviors child molesters use to create compliant victims. *See, e.g., Perez v. State*, 562 S.W.3d 676, 683 (Tex. App.—Fort Worth 2018, pet. ref'd) (expert in a child

sexual assault case testified that "she had learned common characteristics of perpetrators and victims, including the type of power and control that exists in such a relationship and the difficulties children have testifying in court"); *Eldred v. State*, 431 S.W.3d 177, 187 (Tex. App.—Texarkana 2014, pet. ref'd) (noting the potential probative force of expert testimony that "sexual predators establish and assert control over their child victims").

The Court of Criminal Appeals stated in *Morris* that "'[i]t is only at the dawn of judicial consideration of a particular type of forensic scientific evidence that trial courts must conduct full-blown 'gatekeeping' hearings,'" and that "'[t]rial courts are not required to re-invent the scientific wheel in every trial.'" *Morris*, 361 S.W.3d at 655 (quoting *Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003)). Even a cursory examination of the cases shows we are hardly at "the dawn of judicial consideration" for the testimony appellant is complaining about in this appeal—e.g., testimony regarding the power-differential between adults who sexually abuse children and their child victims. Moreover, the trial court could have concluded Skidmore's testimony was relevant to explaining the complainant's behavior to the jury. In other words, Skidmore's testimony helped the jury to understand why the complainant was still a victim even though she believed she was in love with appellant. It also aided the jury in understanding why the complainant kept running away to appellant's house, and why she began living with him and relying on him for food and clothing after her parents kicked her out of the house. Accordingly,

even if error was preserved, the trial court did not err in admitting Skidmore's testimony. We overrule appellant's first issue.

## 2. Jury Charge

In his second issue in 00300-CR, appellant asserts that sexual assault of a child is a nature of conduct offense, and that the trial court erred in failing to limit the culpable mental states of "intentionally" and "knowingly" to the nature of appellant's conduct. He complains of the following definitions in the jury charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct, or with respect to the circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application paragraph of the charge reads as follows

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2018, in Dallas County, Texas, the defendant, MIGUEL JOSE RIVERA, did unlawfully, then and there intentionally and knowingly cause the contact or penetration of the sexual organ of L.L. by the sexual organ of the defendant, and at the time the child was younger than 7 years of age, then you will find the defendant guilty as charged in the indictment and so say by your verdict.

> If you do not so find, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty.

Appellant did not object to the jury charge.

We review complaints of jury charge error by first determining whether error

exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Keller v. State*, 604 S.W.3d 214, 229 (Tex. App.—Dallas 2020, pet. ref'd). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Keller*, 604 S.W.3d at 229. When, as in this case, the alleged jury charge error was not objected to, we will reverse only if an error "was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Keller*, 604 S.W.3d at 229. Egregious harm consists of errors affecting the very basis of the case or depriving the defendant of a valuable right. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Keller*, 604 S.W.3d at 229. We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Nava*, 415 S.W.3d at 298; *Keller*, 604 S.W.3d at 229.

Because appellant did not object to the definitions of intentionally and knowingly in the trial court, he must show that the definitions, even if erroneous, caused egregious harm. *Almanza*, 686 S.W.2d at 171. However, even if we assume the charge was erroneous, appellant has not established that he was egregiously harmed. *Keller*, 604 S.W.3d at 229. In fact, appellant does not argue on appeal that the instructions caused egregious harm. He contends the *Almanza* some harm or

egregious harm standard "has proven unworkable" and that when an appeals court finds error in the charge "the remedy should always be reversal." Appellant, in other words, fails to provide argument or authority regarding the alleged harm caused by the definitions of intentionally and knowingly included in the charge. *See* TEX. R. APP. P. 38.1(i); *see also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *Keller*, 604 S.W.3d at 229–30.

Moreover, we find no egregious harm in this record. In addition to the overwhelming evidence of guilt presented by the State, appellant admitted he had sex with the complainant, so his culpable mental state was not at issue. This weighs against a finding of harm. *See Keller*, 604 S.W.3d at 230. Also, the application portion of the charge correctly instructed the jury because it tracked the statutory language. *See* TEX. PENAL CODE § 22.011(B), (C). Thus, even if we assume the definitions of intentionally and knowingly were erroneous, appellant was not egregiously harmed. *See Keller*, 604 S.W.3d at 230. We overrule appellant's second issue.

### 3. Jurisdictional Issue

In his only issue in 00301-CR, appellant argues the trial court lacked jurisdiction to hear the instant cases and render judgment because the case was not properly transferred to its docket.

We stated in a recent opinion that appellant's argument, which he has raised in this Court many times before, is contrary to established law. *See Keller*, 604

S.W.3d at 231. "'When a defendant fails to file a plea to the jurisdiction, he waives any right to complain that a transfer order does not appear in the record.'" *Id.* (quoting *Wilson v. State*, No. 05-18-00801-CR, 2019 WL 3491931, at *5 (Tex. App.—Dallas Aug. 1, 2019, no pet.) (mem. op., not designated for publication)). Appellant did not file a plea to the jurisdiction, and he therefore waived this complaint.

Furthermore, even if we assume appellant preserved his complaint for review, this Court has considered and rejected this same argument on numerous occasions. *See, e.g., Keller*, 604 S.W.3d at 231; *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd); *Wilson*, 2019 WL 3491931 at *4; *Johnson v. State*, No. 05-18-01230-CR, 2019 WL 6317866, at *2 (Tex. App.—Dallas Nov. 26, 2019, no pet.) (mem. op., not designated for publication). As we have stated many times before, a transfer order is not required in the first court where the indictment is filed after the grand jury returns it. *See, e.g.*, *Bourque*, 156 S.W.3d at 678; *Johnson*, 2019 WL 6317866, at *3; *Hopkins v. State*, No. 05-17-01344-CR, 2018 WL 5024023, at *1 (Tex. App.—Dallas Oct. 17, 2018, no pet.) (mem. op., not designated for publication); *Hines v. State*, No. 05-17-00416-CR, 2017 WL 6276005 at *1–2 (Tex. App.—Dallas December 11, 2017, no pet.) (mem. op., not designated for publication); *Hawkins v. State*, No. 05-15-00859-CR, 2016 WL 335702, at *1 n.1 (Tex. App.—Dallas January 27, 2016, no pet.) (mem. op., not designated for publication).

In this case, the indictment has the designation "292nd" in the upper right-hand corner, and nothing in the record suggests it was filed in any other court or appeared on any other docket before being filed in the 292nd Judicial District Court. The trial court had jurisdiction to hear the case and render judgment. We overrule appellant's third issue.

### 4. State's Cross-Issue

In its cross-issue, the State asks us to modify the judgment in 00300-CR because it fails to indicate appellant is required to register as a sex offender and it omits the age of the complainant at the time of the offense.

This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc when the evidence necessary to correct the judgment appears in the record. *Asberry*, 813 S.W.2d at 530. We may reform judgments to correct matters such as improper recitations or omissions relating to punishment, delete affirmative findings improperly entered into the judgment, and correct statutory references. *See id.*; *Mills v. State*, No. 05-19-00790-CR, 2021 WL 3754570, at *3 (Tex. App.—Dallas Aug. 25, 2021, no pet.) (mem. op., not designated for publication); *Medlock v. State*, No. 05-11-00668-CR, 2012 WL

4125922, at *1 (Tex. App.—Dallas Sept. 20, 2012, no pet.) (mem. op., not designated for publication).

The record reflects that appellant was convicted of an offense requiring sex offender registration. *See* TEX. CODE CRIM. PRO. art. 62.001(5)(A) (including conviction under section 22.011 of the penal code as a reportable conviction or adjudication), art. 42.01 § 1(27) (requiring judgment to state that registration is required and provide age of victim if defendant convicted of offense requiring registration under article 62). The judgment in 05-20-00300-CR, however, does not indicate registration is required, and it lists the victim's age at the time of the offense as "N/A." Appellant was convicted of sexual assault of a child and the record shows the complainant was fourteen years old at the time he sexually assaulted her. Based on the record, we sustain the State's cross-issue and modify the judgment to reflect that appellant is required to register as a sex offender and that the complainant was fourteen years old at the time of the offense. *See* TEX. R. APP. P. 43.2(b); *Asberry*, 813 S.W.2d at 529–30.

We affirm the judgment in 05-20-00300-CR as modified, and we affirm the judgment in 05-20-00301-CR.

|  | /Lana Myers// |
| 200300f.u05 | LANA MYERS |
| 200301f.u05 | JUSTICE |
| Do Not Publish | |
| TEX. R. APP. P. 47.2(b) | |

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MIGUEL JOSE RIVERA, Appellant

No. 05-20-00300-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F19-11498-V. Opinion delivered by Justice Myers. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section regarding sex offender registration is revised to state that the defendant is required to register as a sex offender; and

The age of the victim at the time of the offense is revised to show "14 years."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of January, 2022.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MIGUEL JOSE RIVERA, Appellant

No. 05-20-00301-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F16-29747-V. Opinion delivered by Justice Myers. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of January, 2022.